**[J-78-2019] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 768 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated June 29, 2018 in |
| | : | the Court of Common Pleas, Bradford County, |
| | : | Criminal Division at No. CP-08-CR-0000309- |
| v. | : | 1995. |
| | : | |
| | : | SUBMITTED: July 19, 2019 |
| JOHN JOSEPH KOEHLER, JR., | : | |
| | : | |
| Appellant | : | |

**CONCURRING STATEMENT**

**JUDGE CAROLYN NICHOLS**                                    **DECIDED: April 24, 2020**

I join the Majority opinion in all respects and write separately to emphasize that there is a long history of cases that have been remanded to trial level courts in order to determine whether judicial bias existed that violated the due process rights of litigants, and whether relief is merited. The instant case differs in the sense that it seeks to resolve the atypical question of whether a PCRA court has the authority to resolve a post-conviction claim that alleges appellate judicial bias occurred which violated due process.

In order for due process protection to be meaningful, I agree with the Majority that claims of post-conviction appellate judicial bias should not be treated differently than other post-conviction collateral claims. A PCRA court is the appropriate forum to address collateral challenges to appellate-level constitutional errors, including the adjudication of claims of ineffectiveness of appellate counsel, and further, that the court may grant a new appeal *nunc pro tunc*, if merited, as a well-established form of relief. *See* Majority Op. at 13-14, 15-17*; see also Commonwealth v. Taylor*, 218 A.3d. 1275 (Pa. 2019); *Commonwealth v. Robinson*, 204 A.3d 326 (Pa. 2018).

1

The review of several cases is instructive. The Supreme Court of the United States concluded that a Justice of the Alabama Supreme Court's participation in the multimember tribunal's adjudication of Appellant's case violated Appellant's due process rights, and that the appearance of justice would be best served by vacating the decision and remanding it for further proceedings because the Justice had a direct, personal and pecuniary interest in the outcome of Appellant's case, which enhanced the settlement value of his own litigation. *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). The High Court further stated that "[t]he Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" *Aetna*, 475 U.S. at 824 (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)).

The United States Court of Appeals for the Ninth Circuit, in *Hurles v. Ryan*, 752 F.3d 768 (9th Cir. 2014), summarized a long history of United States Supreme Court decisions as follows:

> The Supreme Court held long ago that a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955). "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." *Id.*; *cf. Mistretta v. United States*, 488 U.S. 361, 407, 109 S. Ct. 647, 102 L. Ed. 2d 714 (1989) ("The legitimacy of the Judicial Branch ultimately depends on its reputation for impartiality and nonpartisanship."). This most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated fairly by a neutral and detached arbiter.

2

> "The Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard," for a judicial bias claim. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997). While most claims of judicial bias are resolved "by common law, statute, or the professional standards of the bench and bar," the "floor established by the Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Id.* at 904-05, 117 S. Ct. 1793 (quoting *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)). The Constitution requires recusal where "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Withrow*, 421 U.S. at 47, 95 S. Ct. 1456.

*Hurles*, 752 F.3d. at 789.[1]

Similarly, in *Bracy*, the High Court determined that given the facts of the case, "it would be an abuse of discretion *not* to permit discovery," the scope and extent of which was to be determined by the federal district court, and the case was remanded for further proceedings. *Bracy*, 520 U.S. at 909 (emphasis added). In *Bracy*, the petitioner was tried, convicted, and sentenced to death before a trial judge that was ultimately convicted in federal court of racketeering and related charges for taking bribes and "fixing" cases. *Id.* at 900-02. Although the judge was not bribed in the petitioner's case, the High Court determined that the allegations were sufficiently specific to permit discovery. *Id.* at 903-04, 908-10 (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

"Justice must satisfy the appearance of justice," words written by United States Supreme Court Justice Black[2] over sixty years ago in *In re Murchison*, 349 U.S. at 136,

---

[1] The *Hurles* court remanded the case to the federal district court for an evidentiary hearing on the petitioner's claim of judicial bias after the district court denied his *habeas corpus* petition challenging his conviction for capital murder and the imposition of his death sentence in Arizona state court. Essentially, the petitioner alleged judicial bias based on the trial judge's responsive pleadings to his pre-trial special action petition that the appellate court ruled improper for a judge to file and dismissed for lack of standing. The appellate court ultimately dismissed the petitioner's claim, and the trial judge presided over petitioner's jury trial, including the penalty phase, which resulted in the imposition of his death sentence. *Hurles*, 752 F.3d at 776-77.

[2] Justice Black was quoting Justice Frankfurter from his opinion in *Offut v. United States*, 348 U.S. 11, 14 (1954).

that still resonate in today's judicial system. This principle is evident in the above-referenced cases that were remanded to trial level federal courts and state courts in the interest of justice to address judicial bias issues, and this principle applies equally to the instant case, albeit allegations of post-conviction appellate judicial bias.

No one is above the law. As the Majority correctly observes, the proper forum to adjudicate post-conviction collateral challenges alleging appellate judicial bias is the PCRA court which has original jurisdiction over PCRA proceedings pursuant to 42 Pa.C.S. § 9545(a). Further, there is no dispute that a PCRA court has jurisdiction to develop a record of pertinent facts and evidence through discovery, the scope and extent of which it will determine, in addition to evidentiary hearings. Additionally, a PCRA court has the authority to grant relief, including a new appeal if merited, and the court's decisions are subject to appellate review if an appeal is pursued.